## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**UNITED STATES OF AMERICA,**

**vs.**

                                  **Case No. 5:02cr8-RH**
                                  **Case No. 5:04cv41-RH/WCS**

**MICHAEL RAY ALFORD,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This cause is before the court for ruling on Defendant's amended 28 U.S.C. § 2255 motion and memorandum.  Docs. 111 and 112.  The Government filed a response, doc. 115, to which Defendant filed a reply.  Doc. 117.

Defendant raised 18 grounds for relief in his § 2255 motion.  The court sets forth the procedural and factual history below as relevant to resolution of his claims.  Additional facts are set forth as necessary in discussing particular claims for relief.

**Procedural History**

Defendant was charged in count one with interstate transmission by computer of visual depictions produced using a minor engaged in sexually explicit conduct where the visual depictions were of such conduct, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1).

Doc. 1.  He was also charged in count two with interstate transmission by computer of child pornography, in violation of 18 U.S.C. § § 2256(8)(A) and 2252A(a)(1).  *Id.*  Both counts charged the date of the offense as September 15, 2001.

Defendant was briefly represented by Jonathan Dingus, followed by then Assistant Public Defender Elizabeth Timothy.  Doc. 12.  "[D]ue to caseload purposes and a developing conflict between" counsel and Defendant, Timothy filed a motion to withdraw.  Doc. 17.  Christopher Patterson represented Defendant through rearraignment, then filed a motion to withdraw as addressed in more detail ahead. Clyde Taylor was appointed, and represented Defendant through his direct appeal.

Pursuant to a plea and cooperation agreement, Defendant entered a guilty plea to count one on August 15, 2002.  Doc. 28 (agreement) and 59 (transcript).  Defendant advised the court that he had "about" an eleventh grade education, was aware of no mental or psychological problem or treatment, and had not had drugs or alcohol in the past 24 hours.  Doc. 59, p. 4.  The court explained his rights, and Defendant said he understood he was giving up these rights as well as any defenses he might have by pleading guilty.  *Id.*, pp. 4-6.  Defendant was advised:

> The charge against you in Count 1 is transporting or shipping in interstate commerce, by means of a computer, visual depictions which were produced using a minor engaged in sexually explicit conduct and which visually depict such conduct in violation of Title 18, United States Code, section 2252, on or about September 15, 2001.

*Id.*, p. 6.  Defendant said he understood.

Defendant said he read and signed the plea agreement, and said he read, understood, and agreed with every word of it.  *Id.*, pp. 6-7.  He agreed that every word of the statement of facts was true.  *Id.*, p. 7.  Defendant agreed to the statement of

facts:  that he had internet access through Web TV Plus, that on that date he sent

seven photographs attached to an email to someone in Pennsylvania, and that the

photos depicted a female engaged in sexually explicit conduct, and a pediatrician had

looked at the images and said the girl was 12 years old.  *Id.*, pp. 7-8.  Defendant said he

did not "really remember the picture" but said he had "seen it," and the photo was what

he sent to Pennsylvania.  *Id.*, p. 8.  Defendant said they took his computer away but

before that he still had the pictures.  *Id.*, pp. 8-9.  Defendant did not remember telling

law enforcement officers that he had sent sexual images of juveniles more than once,

but admitted he might have done so.  *Id.*, p. 9.

Defendant was advised that he faced a maximum sentence of 15 years in prison,

as well as a fine and supervised release, and he said he understood.  *Id.*, p. 10.

Defendant said he talked to counsel about the United States Sentencing

Guidelines, and the court advised that counsel might not necessarily know what the

guidelines would be in his case, and that at sentencing the court could consider facts

other than what they had talked about in the guilty plea.  *Id.*, p. 11.  Defendant said he

understood that if counsel's estimate of the guidelines was incorrect, that would not be a

basis for withdrawing the plea.  *Id.*, p. 12.  Defendant said he understood the court could

sometimes impose a sentence higher or lower than the guidelines range.  *Id.*, p. 13.  He

said he understood that the court could consider facts about the second count which

was being dismissed pursuant to the plea agreement.  *Id.*  Later in the hearing

Government counsel estimated a sentencing range of at least 33-41 months.  *Id.*, pp. 18-19.[1]

Defendant told the court that the plea and cooperation agreement (doc. 28) was his entire agreement with the Government, that there was no other agreement or understanding.  Doc. 59, p. 13.  He said no one had made any promise about what sentence would be imposed if he pleaded guilty, he had all plea discussions through counsel, and that no one had threatened or pressured or intimidated or used any force against him to make him plead guilty.  *Id.*, p. 14.  He said he had sufficient time with counsel and counsel answered all his questions, and was satisfied with the way counsel represented him.  *Id.*, p. 14.  Counsel and the Government certified that so far as they were aware the plea was knowing and voluntary, and there were no agreements other than those set forth in the plea agreement.  *Id.*, pp. 14-15.  Defendant pleaded guilty, and said he was pleading guilty because he was in fact guilty.  *Id.*, p. 15.  The court accepted the plea and advised Defendant regarding preparation of the pre sentence report (PSR).  *Id.*, pp. 15-17.

The plea agreement also set forth the maximum penalties, that the guidelines would apply, and that Defendant was waiving his trial rights.  Doc. 28, pp. 2-3 (specifying the rights to plead not guilty, require the Government to prove guilt beyond a reasonable doubt, against self incrimination, to confront and cross examine witnesses,

---

[1] With respect to whether Defendant should remain on bond, the Government noted that Defendant faced "some significant period of incarceration."  *Id.*, p. 18. Starting with the base level and adjusting for the age of the child, distribution of material, and use of a computer, without knowing of other possible aggravators or the full criminal history, and assuming full credit for acceptance of responsibility, Defendant faced 33-41 months.  *Id.*, pp. 18-19.

and to have a jury or judge determine guilt based on the evidence). The agreement stated that the Government would not recommend a specific sentence, and both parties could advise of their versions of the offense and argue positions under the Sentencing Guidelines. *Id.*, p. 3. The agreement stated that "[t]he defendant is pleading guilty because the defendant is in fact guilty of Count One as charged in the indictment," and acknowledged that the Government would present evidence set forth in the statement of facts if the case went to trial. *Id.*, p. 4. It was agreed that either party could offer and the court could consider evidence not limited to the statement of facts. *Id.* Defendant understood that the court would make the final determination as to sentencing, and "that any prediction of his sentence by any person is not a guarantee or binding promise." *Id.*, p. 5.

As set forth in the statement of acts, on September 15, 2001, Defendant lived in Panama City, and had a computer and internet access through WebTV Plus. *Id.*, p. 6. One of the names used by Defendant was "lil-cookie10@webtv.net." *Id.* At approximately 11:27 p.m. on that date, Defendant transmitted seven photographs attached to an email which was received by an individual in Pennsylvania. *Id.*, pp. 6-7. The photographs, depicting a female engaged in sexually explicit conduct, were later shown to a pediatrician with over 30 years of experience. *Id.*, p. 7. The opinion of the pediatrician was that the female in the photographs was under the age of 12. *Id.* A search of Defendant's residence on January 18, 2002, resulted in the seizure of computers, computer and recording equipment, videotapes, and the seven photographs

transmitted on September 15, 2001.  *Id.*  As previously noted, Defendant agreed with

this portion of the statement of facts at the time he entered his plea.[2]

On October 31, 2002, Mr. Patterson filed a motion to withdraw based on

irreparable conflicts with Defendant.  Doc. 32.  Counsel said that against his advice,

Defendant had sent a 60 page document to the court suggesting Defendant did not

understand the crime to which he pleaded guilty.[3]  He said Defendant represented that

he had been advised to expect a sentence of twelve months, which was not true.  He

said Defendant failed to follow advice regarding getting his objections to counsel, and

sent his comments on the PSR directly to the court.  Counsel had met with Defendant

and found they were unable to resolve the conflict.

Defendant then filed, *pro se*, a motion to appoint a new attorney and motion to

dismiss the indictment.  Docs. 37 and 38.  In the motion to dismiss indictment,

Defendant asserts that counsel should be dismissed based on misrepresentation and

lack of legal qualification.  Doc. 38, p. 1.  He said counsel "never gave me much

advice," that the only time he "showed any activity in helping to defend me was on 10-

22-02, it was an objection regarding paragraph (18) in the pre-sentence report."  *Id.*

Defendant refers to a sixty page letter he sent to the court to help himself

because counsel would not do anything for him.  *Id.*  He said he only brought up he was

---

[2] The portion with which he did not clearly agree was in the last paragraph of the statement of facts, which stated that Defendant was interviewed by officers on May 13, 2002, at which time he admitted visiting "chat rooms" on the internet, learning to download images of juveniles engaged in sexual activity, and that he had transmitted images to other people more than once.

[3] The 60 page letter was also referenced in ¶ 60 of the PSR and other places in the record, as discussed *infra*.

falsely accused of, and statements in the plea agreement he did not know of; stating
that he received the agreement in the courtroom and had no time to read or understand
it before the plea.  *Id.*, pp. 1-2.  He said counsel did not go through the plea agreement
or explain anything to him.  *Id.*, p. 2.

Defendant alleged that the day before sentencing counsel told him the sentence
would be a year or so, that if he assisted the Government the sentence would be cut in
half and he would be no more than a year.  *Id.*, pp. 2-3.  Defendant claimed he never
agreed to "anything more than probation or one year, anything over this would be
completely insane!"  *Id.*, p. 3.

Defendant claimed that on October 15, 2002, counsel told him to provide
objections as soon as possible, but never gave him a specific date or said they could
get an extension of time.  *Id.*, pp. 3-4.  Defendant received the PSR on October 12 or
13, so he alleges he only had a few days to go over it.  *Id.*, p. 4.  He said he sent his
"letter 'document'" to his mother, who made copies and sent them to the court and to
counsel.  *Id.*  He said that counsel met with him on October 30, 2002, and they did not
agree.  He complained to counsel that he was going on what counsel told him
(apparently about the one year sentence), and said on charges in 1999 he pleaded
guilty in exchange for a one year sentence and served only eight months of that term.
*Id.*, p. 5.

Defendant claimed he confronted Patterson counsel with the rules allowing a
nolo contendere plea (as counsel had advised such a plea was not available in the
federal system), and counsel became upset.  *Id.*, pp. 5-6.  Counsel allegedly said that
he would be filing a motion to withdraw, advised Defendant that the court would only

add more points, and told Defendant he would "fight me every step of the way, saying that he did not tell me I was looking at one year." *Id.*, pp. 6-7

Defendant also claimed that counsel had said he was set up by the probation officer, Jeff Law, and by the State Attorney, and counsel would not help him file charges against Jeff Law. *Id.*, p. 7.

A hearing was held, and counsel's motion to withdraw was granted. Docs. 60 (transcript) and 35 (order, substituting Clyde Taylor for Christopher Patterson). At the hearing, Defendant told the court he was dissatisfied with counsel, as counsel had "misled" him "throughout the federal system and everything." Doc. 60, p. 3. The court said a new lawyer would be appointed, but "[m]uch of the advice that you criticized Mr. Patterson for is plainly correct." *Id.* For example the court would only accept a nolo contendere plea under unusual circumstances, but would usually not accept a plea from a defendant who said he was not guilty. *Id.*, pp. 3-4. The court went over the advice given to Defendant at the time of the plea and his responses under oath. *Id.*, pp. 4-5. Defendant was advised to be completely honest with his new lawyer, and listen carefully to the lawyer's advice. *Id.*, pp. 5-6. Defendant was advised that he was not entitled to a second or third lawyer, and "you need to try your best to get along with your new lawyer, because we're not going to do this again." *Id.*, p. 6. Defendant responded, "Yes, sir." *Id.* The court said "you also need to talk with your lawyer about what happened in the case, what's true and what's not true. If you are not guilty of this offense, then something has gone terribly wrong, and it needs to get corrected." *Id.*, pp. 6-7.

The court also advised (and asked Mr. Patterson to inform new counsel) that, for purposes of sentencing, there was concern about the five level increase under U.S.S.G.

§ 2G2.2.  *Id.*, pp. 7-8.  Defendant was advised that he had been adjudicated guilty, and

the next issue the court would decide would be the appropriate sentence, and the

sentencing proceeding would be on January 9, 2003.  *Id.*, pp. 9-11.

In a written order, the court denied the *pro se* motion to dismiss indictment.  Doc.

39.  The court found that the motion was improperly filed, and also "was and is frivolous

on its face."

> At defendant's rearraignment, defendant *took an oath to tell the truth, and
> swore he transmitted child pornography images*, exactly as charged in the
> indictment.  Defendant also swore to various facts inconsistent with the
> allegations of his motion, including, for example, that nobody had
> promised him what sentence would be imposed if he pled guilty.  In any
> event, there is no basis for dismissal of the indictment.

*Id.*, p. 2 (emphasis added).

Through counsel, Defendant then filed a motion for determination of mental

competency.  Doc. 41.  A private investigator sent to talk to Defendant thought

Defendant was paranoid, based on his belief of a large conspiracy, and said he had

trouble talking to Defendant as what he was saying did not make sense.  Doc. 41, Ex.

A.  Counsel said these concerns were confirmed by former counsel Patterson, and

witnessed through communications with family members which indicated "gross

misunderstandings as to the process and procedures facing the Defendant and the

actual status of the case as it now rests."  Doc. 41, p. 2.  The family expected

Defendant to be home by the holidays (less than a month away when the motion was

signed), and Defendant seemed to anticipate imminent release.  *Id.*  Counsel therefore

sought appointment of a forensic expert to conduct a psychological examination.

The Government did not object but requested that if an evaluation was ordered, that Defendant be sent to a federal medical center. Doc. 43. The court indicated that Defendant could incur expenses up to $300 without a court order, and that reasonable expenditures up to $1,000 would be approved if required. Doc. 44. The motion was denied without prejudice to retention of a mental health expert under the Criminal Justice Act, and without prejudice to refiling a motion for a competency exam as appropriate. *Id.*

Defendant was evaluated by Dr. Michael T. D'Errico, a forensic psychologist. Doc. 46 (minutes of sentencing), attachment. The forensic report dated December 26, 2002 (the same date of the evaluation) found Defendant generally competent. As to prior statements made to the investigator about possible paranoid beliefs, "Mr. Alford was able to fully explain his feelings of persecution regarding these two individuals which, in this examiner's experience, were both well within the realm of possibility." Report p. 3. Dr. D'Errico did not believe that Defendant suffered "from classical types of paranoid thinking." *Id.* The cover letter to the report, written to counsel, noted that Defendant "made several paranoid sounding statements that I felt indicated that further evaluation and assessment was in order."

Sentencing was held on January 9, 2003. Doc. 61 (transcript). Counsel noted that the report found Defendant was competent, but that the letter referenced paranoid statements. Doc. 61, p. 2. That day counsel had spoken to Dr. D'Errico, who said it was "50/50" on whether further evaluation should be done or would have meaningful results. *Id.*, p. 3. Counsel had spoken to Defendant regarding "the motion to withdraw a plea that he had attempted to file *pro se*, which the court appropriately referred back."

*Id.*  He said Defendant was frustrated, and he explained to Defendant he did not think it was in Defendant's best interest to try to withdraw the plea regardless of whether there might be merit to it, and they should obtain closure through sentencing.  *Id.*  He said that it was relayed to him by Defendant, through the investigator, and numerous phone conversations with Defendant's family, that Defendant believed misrepresentations were made, especially as to the penalty, and that there was an ongoing conspiracy to have him arrested, the charges brought, and which affected information in the PSR.  *Id.*, pp. 3-4.  He thought Defendant honestly believed this.  *Id.*  The three page handwritten request to withdraw was submitted for filing.  *Id.*, p. 6.

Regarding the conspiracy, Defendant thought there were items taken from his home earlier that came into play in this case, and that the indictment overstated or exaggerated the conduct, and counsel explained to Defendant that even if some of these things were true it might not be a defense to the guilt in this case.  *Id.*, pp. 7-8. The Government was concerned that Defendant had been put under oath and went through the plea colloquy, then came back to say things were different and he did not want to take responsibility or be sentenced.  *Id.*, p. 9.  "He may have some beliefs as to what caused these charges to come about, but he stood before you and said, 'Yeah, I did it.'  He did it.  That remains the case."  *Id.*, p. 10.  Government counsel did not believe that one sentence from the doctor, contained in the cover letter, should trump the attached clinical assessment finding competence.  *Id.*  "What [Defendant] doesn't understand is that what he's trying to represent to you today through counsel, he's basically saying, 'I lied to you at the time of the plea.  I committed perjury. . . .'"  *Id.*

In response to the court's question, Defendant said he had not read the PSR or discussed it with counsel.  *Id.*, pp. 11-12.  Counsel said they had discussed it, and Defendant said they had not.  *Id.*, p. 13.  A recess was taken for Defendant to go talk to counsel "as long as you want to," that they would "be here as long as it takes."  *Id.*, p. 13.  After the recess, in response to the court's question Defendant said he had discussed the PSR with counsel "a little bit."  *Id.*

The court addressed objections to the PSR.  An earlier objection (for increase based on pattern of sexual abuse or exploitation) had been withdrawn as there was no such increase in the current PSR.  *Id.*, p. 14.  An objection to counting uncounseled convictions (in paragraphs 44, 45, and 46) was withdrawn as review of the records revealed that Defendant was represented by counsel.  *Id.*, pp. 14-15.  Defendant also objected to the failure to award credit for acceptance of responsibility, and sought departure for diminished capacity pursuant to U.S.S.G. § 5K2.13.  *Id.*, p. 14.

Counsel argued that there should be a two or three level reduction based on role in the offense under § 3B1.2, which was denied.  *Id.*, pp. 15-19.

Counsel sought a departure for diminished capacity pursuant to U.S.S.G. § 5K2.13.  *Id.*, p. 14.  He argued that Defendant had a deep rooted belief about the system, that Defendant had a limited education including special classes, and perhaps alcohol abuse, to support diminished capacity.  *Id.*, pp. 19-20.  He said Defendant had gotten into the situation of possibly losing credit for acceptance of responsibility, by trying to speak out on what he perceived was done to him, that it was not every day that someone argued that probation, agents, and other people had conspired, over a number of years, and had been into his house.  *Id.*, pp. 20-21.  After hearing argument

from defense and the Government, the court found that it had discretion to depart under 5K2.13, but there was no a factual basis for departure, and even if there were a showing of diminished mental capacity, there was no showing that it contributed to the commission of the offense.  *Id.*, pp. 24-25.  It was concluded that the factual basis had not been shown, but the court "would not choose to depart in any event."  *Id.*, pp. 25-26.


Defendant objected to the denial of credit for acceptance of responsibility, which was removed from the amended PSR.  *Id.*, p. 26.

Counsel also advised that during the break Defendant had pointed out paragraph 74 of the PSR, which said that the conviction would qualify Defendant as a sex offender under 18 U.S.C. § 4042(c)(4).  Counsel objected, and said that this argument should be added to the request to withdraw the plea, "because it subjects him to a substantial additional penalty that was clearly not discussed," with regard to the plea agreement or the plea.  *Id.*, p. 27.  There was argument over whether Defendant had to have knowledge or the sanction or if it was a collateral consequence of the plea he did not have to know.  *Id.*, pp. 28-30.  Counsel asked if Defendant could be put under oath to testify that if he had known of this consequence he would not have entered his plea.  *Id.*, p. 30.  The court advised that he and Defendant should discuss this, because the acceptance of responsibility issue had not been decided and if Defendant testified he needed to tell the truth.  *Id.*, pp. 30-31.  Defendant had talked to the court at length under oath when he pleaded guilty, and this was "not a game" or "something to be trifled with."  *Id.*, p. 31.  The court said "Mr. Alford, don't start making testimony up.  It

needs to be the truth, the whole truth, and nothing but the truth.  Consult with Mr.
Taylor; and, if you want to testify, you certainly can."  *Id.*, p. 32.

Defendant agreed to testify and was sworn.  *Id.*, pp. 32-33.  He said he never
reviewed a plea agreement with Chris Patterson, but he signed it.  *Id.*, p. 34.  He said he
was never told he would be designated as a sex offender, or what that would mean.  *Id.*,
pp. 34-35.  He did not know he might be designated a sex offender until he saw the
PSR, and had he known that he would be required to register and be designated a sex
offender, he would not have entered a guilty plea.  *Id.*, p. 35.  On cross examination,
Defendant said he had "no clue" what the sanctions were for being designated a sex
offender.  *Id.*, pp. 35-36.  He still did not want to be "considered a sex offender," which
"sounds like for someone that actually physical, did something to somebody."  *Id.*, p. 36.
He said he did not want people to look down on him, but when he entered the plea he
"didn't really know what to think.  It all just happened too quick, too fast."  *Id.*, p. 38.  The
motion to withdraw the plea was denied as the sex offender designation was a collateral
consequence of the plea.  *Id.*, pp. 41-46.  The court noted that at the time the plea was
entered there was no reason to be certain the range would be this low, and the
acceptance of responsibility would make a difference of 16-20 months, and no possible
trial defense had been shown.  *Id.*, pp. 45-46.

The acceptance of responsibility question was still open, and the court gave
Defendant the opportunity to make any statement (or not) he wanted to make.  *Id.*, p.
46.  Defendant said he knew he "shouldn't have been on-line looking at that kind of
stuff," and he did not know that it was against the law.  *Id.*, p. 48.  He admitted "I looked
at them, yeah.  And then I deleted them.  Every one of them I deleted them."  *Id.*  Some

got forwarded but he did not know how or did not know what he was forwarding.  He said he read in the paper that about many other people doing the same thing but not all arrested, and did not want it on his record as he would have to move.  *Id.*, p. 49.

The court then asked Defendant a question, and explained he did not have to answer.  *Id.*, pp. 49-50.  The PSR reflected that the person in Catawisa Pennsylvania said that she was online with a person with a person nicknamed Little Cookie, a name Defendant used, talking by instant message.  *Id.*, p. 50.[4]  The person asked if she had any pictures, and she sent one of her and her children.  He was going to send one of him and his daughter.  *Id.*  When the woman opened the photo she saw it was an adult male having intercourse with a female child.  *Id.*   The message with the photos said "Me and Amber, fix'n to go at it hard," and further said "you have a very hot looking daughter too.  Let's trade pics.  Amber said 'Hi,' hope you like her."  *Id.*, p. 51.  The woman turned the message over to law enforcement.  *Id.*  The court said to Defendant:

> Now, I understand that e-mails get forwarded and sent and attached, and sometimes you hit one or two key strokes, and something gets attached or sent.  I don't understand how by accident those messages got on that e-mail.
>
> So, either somebody is making all this up, and you didn't do it.  It doesn't make sense to say, I deleted everything I got, and maybe it got forwarded by accident."  That message, there's an Amber *that you knew*.[5] . . . So,

---

[4] It is spelled Cooky in the transcript but the nickname stated in the PSR is "lil-cookie."  PSR, ¶ 6.

[5] Defendant admitted that he did know an Amber who "lived in there for awhile." *Id.*, p. 51.  According to the PSR, a woman and her daughter Amber had briefly resided with Defendant in 1999.  PSR, ¶ 10.  A police complaint was filed accusing Defendant of abusing the juvenile at his residence, but did not result in formal criminal charges.  *Id.* The child in the seven photographs, however, according to the PSR, was not identified as anyone Defendant knew personally, and the age of the photographs was unknown. ¶ 11.

my question, and you don't have to answer it, and you can talk to Mr. Taylor before you answer, if you want to, but my question is:  Did you send that message or not?

*Id.*, p. 51.[6]  (Emphasis added).

Defendant responded:

I don't even remember talking to this lady.  I mean, like you said, she sent a picture to me, I don't remember seeing no picture of nobody that sent of her and her daughter.  I don't remember that.  And I don't remember sending anything – anything like that, I know, and I don't have a daughter.  I don't know why I would say, "Here's me and my daughter."  I ain't even married.

I don't – I mean, I've sit and thought about it, and if – 'cause if I had went to a chat room and talked to someone, I talked to her for just a brief second, I never hear from the person again never.  There are so many people on there, but I don't remember talking to her.

*Id.*, p. 52.  Government counsel referenced statements in Defendant's letter, referring specifically to something on page 57.  *Id.*, pp. 52-53.

The court denied the reduction for acceptance of responsibility, stating that if – just then – Defendant had admitted he did it, he would been awarded the reduction.  *Id.*, p. 54.  There were three possibilities which would explain Defendant's current position: he was in denial and wished he had not done it; he "just flat denies doing it" as would someone who never entered a plea; or he honestly could not remember this *particular* incident because he had done it so many times.  None of those scenarios would constitute acceptance of responsibility.  *Id.*, pp. 54-55.  The motion for new trial or attempt to withdraw the plea were not grounds for denial of credit; "[b]ut the denials of

_____

[6] It was confirmed that the Government had the email and that the woman in Pennsylvania would have testified had there been a trial.  *Id.*, p. 55.

guilt that now constitute his position are." *Id.*, p. 57.   Defendant was sentenced to 57

months, at the low end of the range of 57-71 months.  *Id.*, pp. 56, 57.

On appeal, Defendant challenged denial of the motion to withdraw guilty plea.

The claim was rejected.  Doc. 73 (opinion), pp. 4-8.  Defendant also challenged, and the

Eleventh Circuit rejected, the denial of credit for acceptance of responsibility.  *Id.*, pp. 8-

10.

**Standard of Review**

A § 2255 motion is not a substitute for a direct appeal:

Courts have long and consistently affirmed that a collateral challenge,
such as a § 2255 motion, may not be a surrogate for a direct appeal.
Because collateral review is not a substitute for a direct appeal, the
general rules have developed that: (1) a defendant must assert all
available claims on direct appeal, and (2) "[r]elief under 28 U.S.C. § 2255
'is reserved for transgressions of constitutional rights and for that narrow
compass of other injury that could not have been raised in direct appeal
and would, if condoned, result in a complete miscarriage of justice.'"

Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir.), *cert. denied*, 543 U.S. 891

(2004) (citations and footnotes omitted).

An issue not raised on appeal is procedurally barred and will not be reviewed

absent a showing of cause and prejudice, or of actual innocence.  United States v.

Nyhuis, 211 F.3d 1340 , 1344-45 and n. 5 (11th Cir. 2000) (citations omitted).  *See also*

Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714

(2003) (noting "the general rule that claims not raised on direct appeal may not be

raised on collateral review unless the petitioner shows cause and prejudice.") (citations

omitted).

A guilty plea must be knowing, voluntary, and made "with sufficient awareness of the relevant circumstances and likely consequences," so the court must "meticulously follow the provisions" of FED. R. CRIM. P. 11.  United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir.1984) (citations omitted).  "A guilty plea, since it admits all the elements of a formal criminal charge, waives all nonjurisdictional defects in the proceedings against a defendant."  Id., at 1124 (citations omitted).  See also Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983) ("[o]nce a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained.") (citations omitted).  An indictment suffers from a jurisdictional defect when it charges no crime at all; i.e., charges a non-offense. See United States v. Peter, 310 F.3d 709, 714-15 (11th Cir. 2002).

Since Defendant entered his plea on the advice of counsel, he may only challenge the voluntariness of his plea by showing ineffective assistance of counsel. Hill v. Lockhart, 467 U.S. 52, 56-59, 106 S.Ct 366, 369-370, 88 L.Ed.2d 203 (1985) (citations omitted).[7]  In Hill the Court held "that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id., at 58, 106 S.Ct. at 370.

_____

[7] In contrast to other claims which can be procedurally defaulted, ineffective assistance of counsel is cognizable under § 2255 whether or not it could have been raised on appeal.  Massaro v. United States, 538 U.S. at 504, 123 S.Ct. at 1693-94 (ineffectiveness claim could be brought under § 2255 in the first instance); Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) ("ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim.") (emphasis by the Court).

Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice."  Strickland v. Washington, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).  The court need not approach the Strickland inquiry in any particular order, or address both prongs if an insufficient showing is made on one.  466 U.S. at 697, 104 S.Ct. at 2069.  Defendant "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a Strickland claim, and both prongs must be proved to prevail."  Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001), cert. denied, 535 U.S. 926 (2002).  The cases which prevail under Strickland "are few and far between."  Id. (citation omitted).

To show prejudice where ineffective assistance of counsel is alleged in the context of a guilty plea, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 467 U.S. at 59, 106 S.Ct at 370 (1985) (footnote omitted).  To show prejudice due to alleged ineffectiveness at sentencing, Defendant must establish a reasonable probability that, absent counsel's errors, he would have been sentenced him differently.  Strickland, 466 U.S. at 695, 104 S.Ct. 2069 (discussing prejudice in the context of a death sentence); Glover v. United States, 531 U.S. 198, 200, 202-204, 121 S.Ct. 696, 698, 700-701, 148 L.Ed.2d 604 (2001) (assuming sentencing guidelines error, a resulting increase in sentence by at least 6 and possibly 21 months would constitute prejudice under Strickland).

Further, in a challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity.* The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (emphasis added, citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 800, n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases). Where, given the record, a defendant is essentially asserting that his responses to the court at rearraignment– as well as the responses of the attorneys – were untruthful, he would be entitled to an evidentiary hearing "only in the most extraordinary circumstances." Blackledge v. Allison, 431 U.S. at 80, n. 19, 97 S.Ct. at 1632, n. 19; Lasiter v. Thomas, 89 F.3d 699, 702-703 (10th Cir.), *cert. denied*, 519 U.S. 998 (1996) (referencing this footnote).

**"Virtual" Child Pornography**

On April 16, 2002 (prior to the entry of Defendant's plea on August 15, 2002), the Supreme Court decided Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). There the Court found the Child Pornography Prevention Act (CPPA) of 1996 unconstitutionally prohibited virtual child pornography, speech which did not (like actual child pornography) record a crime or create a victim. 535 U.S. at 250, 122 S.Ct. at 1402. The Court rejected as "implausible" the Government's argument that virtual images were indistinguishable from real images of

children.  *Id.*, at 254, 122 S.Ct. at 1404.  "If virtual images were identical to illegal child

pornography, the illegal images would be driven from the market by the

indistinguishable substitutes."  *Id.*  As noted in the concurrence, "the Government points

to no case in which a defendant has been acquitted based on a 'computer generated

images' defense."  *Id.*, at 259, 122 S.Ct. at 1406 (J. Thomas, concurring in the

judgment).  In the event that technology evolved to the point where it would be

impossible to prove images were real, then the Government might be able to regulate

virtual child pornography with narrowly drawn restrictions.  *Id.* (J. Thomas, concurring).

Three justices dissented from the finding that the ban on virtual pornography was

overbroad.  *Id.*, at 261, 263-266, 122 S.Ct. at 1407, 1408-1410 (J. O'Connor, joined by

J. Rehnquist and J. Scalia, concurring in the judgment in part and dissenting in part);

and *Id.*, at 267-273, 122 S.Ct. at 1411-14 (J. Rehnquist, joined in part by J. Scalia,

dissenting) ("we should defer to [Congressional] findings that rapidly technology will

soon make it all but impossible" to enforce prohibitions of actual child pornography).

        Defendant bases a number of his claims on the Supreme Court's holding

regarding virtual child pornography, but there is no indication whatsoever that the

images involved in this case were virtual or computer generated images.  Count one of

the indictment charged that Defendant sent "visual depictions which were produced

using a minor . . . ."  Doc. 1, p. 1.  The statement of facts referred to "seven

*photographs*," and said that "[t]he *photographs* depicted a female juvenile engaged in

sexually explicit conduct."  Doc. 28, pp. 6-7 (emphasis added).  These "*photographs*"

were subsequently shown to a pediatrician with over 30 years of experience.  Based on

the opinion of the pediatrician, the female juvenile depicted in the *photographs* was

under 12 years of age. . . .   Among the items found [pursuant to the search warrant] were the same seven *photographs* which were transmitted on September 15, 2001." Doc. 28, p. 7 (emphasis added).  In discussing the statement of facts with Defendant during the plea colloquy, the court also referred to the seven photographs.  Doc. 59, pp. 7-8.

Defendant said under oath that he was pleading guilty because he was guilty as charged in count one of the indictment, that he read the plea agreement and statement of facts line by line and word by word, and agreed that every word of it was true as to this portion.  The indictment specified that the images were produced using a minor, and the images were repeatedly referenced in the plea agreement and during rearraignment photographs.  Photographs are commonly understood to be taken of actual subject matter, using a camera.  Virtual images created with a computer, like images drawn or painted by hand, are not called photographs.  With this in mind, the court addresses the claims in the order presented.

**Ground One, Two, and Three**

In ground one, Defendant asserts that the Government failed to prove, beyond a reasonable doubt, that the images involved actual minors.  He claims this was an essential element of the offense, and that the images only appeared to be of a minor and were therefore protected by the First Amendment.

In ground two, Defendant asserts that the Government failed to prove that he actually knew that the images depicted an actual child, in violation of the First Amendment.  He asserts there was evidence to prove he "honestly believed that the images he **stumbled** across did not actually involve the use of any **real minors**."  Doc.

111, p. 6 (emphasis in original, square brackets omitted).[8]  Defendant claims that the images were not real, but computer generated images which only appeared to be of real children.

In ground three, Defendant claims that it is impossible to tell whether his conviction was based on the court's determination that the images were of real children (which is constitutionally permissible), or the determination that the images only appeared to be but were not of real children (constitutionally impermissible).  He contends it is impossible to tell which of the two was found by the court, and "[a] conviction **must** be set aside where it is **legally** supportable on one ground, but not on another, and it is **impossible** to tell which ground the judge selected" in this case, with regard to "the disputed images."  Doc. 111, p. 6.

These grounds, such as they are, existed at the time of the guilty plea and should have been raised on direct appeal.  An issue not raised on appeal is procedurally barred and will not be reviewed absent a showing of cause and prejudice, or of actual innocence.  United States v. Nyhuis, 211 F.3d 1340 , 1344-45 and n. 5 (11th Cir. 2000) (citations omitted).  Defendant cannot show prejudice and has presented nothing to show actual innocence.  At the guilty plea, the Government did not have to prove this

---

[8] Defendant uses [] (square brackets) around certain words, some of which are also emphasized in bold font.  They may be used in lieu of quotation marks, or perhaps for additional or alternative emphasis, but have no apparent effect on meaning.  The court generally uses italics to indicate emphasis, and inserts square brackets around text in a quotation which is altered from or added to the original: for example, where a word is misspelled it is followed by [sic], or the word may be substituted or corrected.  Hereafter, the brackets used by Defendant have been omitted, and any brackets within quotations are to indicate alterations by the court.  Any bold font in quoted text is from the original.  Any emphasis added by the court will be indicated in italics, and will be identified by the term "emphasis added" following the quotation.

offense beyond a reasonable doubt and the court did not decide disputed facts.
Defendant waived his right to trial, including his right to have the Government prove
each element of the offense beyond a reasonable doubt.  By signing the statement of
facts and by his statements under oath at rearraignment, Defendant agreed that the
Government could carry its burden to prove he transmitted photographs depicting a
female juvenile, determined by an expert to be under age twelve, engaging in sexual
conduct.  He agreed that he was pleading guilty because he was *in fact* guilty as
charged in count one, which (as noted above) specifically charged that the photographs
were produced using a minor engaged in sexually explicit conduct.  It could hardly be
clearer than that.  Defendant is not entitled to relief.

**Grounds Five and Six**

In ground four, Defendant claims the indictment is invalid on its face, in violation
of the First, Fifth, and Sixth Amendments, for failing to contain the "actual child"
element.  In ground five, Defendant asserts that the district court was without jurisdiction
to convict him because the indictment failed to allege facts constituting a crime, as
images which only appear to be of minors engaged in sexually explicit conduct are
protected by the First Amendment.

Again, these are claims that existed when the guilty plea was entered and should
have been presented on appeal.  Defendant cannot show prejudice and has presented
nothing to show actual innocence.  The indictment charged that Defendant "did
knowingly transport and ship in interstate commerce, by means of a computer, visual
depictions which were produced *using a minor engaged in sexually explicit conduct* and
that the visual depictions were of such conduct, in violation of Title 18, United States

Code, Sections 2252(a)(1) and (b)(1)."  Doc. 1 (emphasis added).  The indictment

correctly charged the offense and there was no jurisdictional defect.  Peter, 310 F.3d

714-715.  The claim of an insufficient factual basis to support the indictment is a

nonjurisdictional defect that was waived by a guilty plea.  Fairchild, 803 F.2d at 1124.

**Ground Six**

Defendant asserts that counsel was ineffective because he failed to challenge

the proof or require the Government to prove that the images were "of actual minors,

and not simply a confabulated image in light of Free Speech," in violation of the First

and Sixth Amendments.  Doc. 111, p. 7.  Had the challenge been raised, Defendant

claims he would have been entitled to dismissal of the charges.

This claim is premised on the completely unsupported assertion that the images

were not of a real child.  Defendant has made no showing that the images were not, in

fact, "visual depictions which were produced using a minor engaged in sexually explicit

conduct."  *Cf.* Reece v. United States, 119 F.3d 1462, 1468-71 (11th Cir. 1997)  Reece,

119 F.3d 1468-71, Jones v. United States, as: 224 F.3d 1251, 1260 (11th Cir. 2000)

(following Reece).[9]

**Ground Seven**

Defendant claims ineffective assistance of counsel for failure of any of his

attorneys to advise him of the change in law, *i.e.* the Ashcroft decision, which pre-dated

---

[9] In Reece the § 2255 movant asserted that counsel was ineffective for failing to
object to application of the guidelines for D-methamphetamine rather than the less
severe punishment for L-methamphetamine.  Defendant could satisfy his Strickland
burden to show prejudice "only if he represents that, given an evidentiary hearing, he
can establish that the methamphetamine he possessed and distributed was the L-type."
*Id.*; *see also*, Jones v. United States, as: 224 F.3d 1251, 1260 (11th Cir. 2000)
(following Reece).

the indictment.  Had Defendant known of this defense, he claims, he would not have entered a guilty plea.

Defendant has not shown that the photographs depicted anything other than an actual minor.  Accordingly, he cannot show that this defense would have applied to him or had any effect on his ultimate decision to plead guilty.  His statements under oath at the time of the plea indicated no confusion over the fact that the images were -- as clearly charged in the indictment, and reiterated in the plea agreement and in open court – photographs using a minor engaged in sexually explicit conduct.  As this was not a viable defense, Defendant cannot show ineffective assistance of counsel.

**Ground Eight**

Defendant claims ineffective assistance of counsel, as none of his attorneys "ever objected to or challenged any of the enhancements, prior convictions, or requested for downward departure of any kind."  Doc. 111, p. 8.  *See also* doc. 112, p. 8.   This claim is not made in good faith and clearly contradicted by the record.  Counsel did make objections at sentencing as discussed in the procedural history of the case, *supra*.  *See also* doc. 45 (Defendant's objections to the PSR, challenging paragraphs 21, 44-46, 85, 89, 90, and adopting all objections made by prior counsel as reflected in the Addendum to the PSR, ¶ ¶ 92-96), doc. 61 (sentencing transcript at pp. 14-26) (specific objections discussed *supra*), and doc. 73, pp. 8-10 (9-11 on the electronic docket) (appellate opinion, rejecting challenge to denial of credit for acceptance of responsibility).

**Ground Nine**

Defendant claims ineffective assistance of counsel as counsel failed to explain to him the plea agreement, and erroneously advised Defendant he would be sentenced to no more than a year and that the Government would file a substantial assistance motion.  Defendant also asserts that he was provided with "a **used** plea agreement from one of Mr. Patterson's prior clients that was **confusingly misleading**."  Doc. 111, p. 9.

The claim that counsel advised Defendant that he faced only a year of prison was raised with regard to Patterson's motion to withdraw.  Docs. 32 (motion) and 37-38 (*pro se* motions to appoint counsel and dismiss indictment).  The court found it facially frivolous.  Doc. 39.  Moreover, it is contradicted by Defendant's statements to the court under oath including his agreement with plea agreement and statement of facts.  The court specifically advised, and Defendant indicated his understanding, that counsel might not necessarily know the guidelines range, and that if counsel's prediction turned out to be wrong this  would not be a basis for withdrawing a plea.  Counsel's estimate was not discussed at that time, though the Government later predicted on the record that Defendant faced a sentencing range of at  least 33-41 months, in arguing that he Defendant should not remain on bond prior to sentencing.  *See supra*, n. 1.  Ground nine is without merit.

**Ground Ten**

Defendant claims ineffective assistance of counsel for failing to explain to him the sex offender registration requirement which would result from his guilty plea.  This was already litigated in the context of the motion to withdraw plea, made by Mr. Taylor at sentencing and pursued on appeal.  The Eleventh Circuit found that Defendant's lack of

knowledge of the registration requirement was collateral consequence, and could not affect the voluntariness of his plea.  Doc. 73, pp. 5-8 (6-9 on the electronic docket).  If his plea could not be involuntary on this basis, Defendant cannot show that counsel's failure to advise him of it rendered his plea unknowing or involuntary.

**Ground Eleven**

Defendant asserts that appellate counsel was ineffective for failing to file appropriate motions and for misleading the court regarding the grounds for withdrawal of the guilty plea.  Defendant also claims that counsel was asked to file a motion for rehearing and a petition for writ of certiorari to the Supreme Court but failed to do so.  As clarified in the memorandum (doc. 112, pp. 10-11) it is Defendant's claim that counsel erroneously relied on the sex offender registration requirement as grounds for withdrawal of the plea, and failed to argue and preserve the intervening opinion in Ashcroft.  Defendant contends that he need not show prejudice where counsel fails to follow a specific request to file a motion for rehearing or petition for writ of certiorari.

Successful appellate issues need not be shown where counsel disregards a specific request to file a notice of appeal.  *See* Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000).  But that is not the claim here.  A direct appeal was filed and litigated.

"[T]he right to appointed counsel extends to the first appeal of right, *and no further.*"  Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (emphasis added); Evitts v. Lucey,  469 U.S. 387, 394, 105 S.Ct. 830, 834-835, 83 L.Ed.2d 821 (1985) ("[t]his right to counsel is limited to the first appeal as of right, and the attorney need not advance every argument, regardless of merit, urged by

the appellant," citing <u>Finley</u>, other citation omitted); <u>Golston v. Attorney General of State of Ala.</u>, 947 F.2d 908, 911 (11th Cir. 1991) (quoting <u>Finley</u>).  Ineffective assistance of appellate counsel claims are analyzed under the test enunciated in <u>Strickland v. Washington</u>.  <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11th Cir. 1997); <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise every nonfrivolous issue. <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at 3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  <u>Smith v. Murray</u>, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667 (quoting <u>Barnes</u>).

Where there is no right to counsel, there is no right to effective assistance of counsel.  <u>Evitts</u>, 469 U.S. at 396, n. 7, 105 S.Ct. at 835, n. 7 ("[o]f course, the right to effective assistance of counsel is dependent on the right to counsel itself,") *citing* <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1301-02, 71 L.Ed.2d 475 (1982); <u>Coleman v. Thompson</u>, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991).  "[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in [the Supreme] Court." <u>Torna</u>, 455 U.S. at 587, 102 S.Ct. at 1301 (*citing* <u>Ross</u>).

Thus, Defendant has no claim with regard to a petition for certiorari to the United States Supreme Court.  Moreover, even if Defendant had a right to counsel for the motion for rehearing, it would not be a analogous to a complete denial of counsel, where prejudice is presumed.  *Compare* Kitchen v. United States, 227 F.3d 1014, 1019-21 (7th Cir. 2000) (deciding that defendant had a right to counsel to appeal the denial of his motion for new trial, denied while his direct appeal was still pending, but rejecting the argument that prejudice could be presumed; finding situation analogous to counsel omitting a particular issue on appeal, in which case the court looks to the possible merits of that issue).  Defendant has not identified any, and a review of the appellate opinion reveals no basis for rehearing.

Defendant also has no claim of appellate ineffectiveness in failing to anticipate and argue the legal conclusion in Ashcroft as there was no showing below, and still has been no showing, that the images were not photographs of an actual child and, in any event, Defendant entered a guilty plea as explained above.  Ground eleven is without merit.

**Ground Twelve**

Defendant asserts that his plea was not knowing and voluntary, as he assumed he was guilty just because he sent the email, and did not understand that one of the elements was that attachments to the email depicted an actual child.  This claim is without foundation for the reasons previously stated.

**Ground Thirteen**

Defendant claims that his conviction violates the Fifth Amendment and FED. R. CRIM. P. 11 because the court failed to satisfy itself that there was a factual basis for the

plea. Defendant alleges that the court "relied upon **erroneous facts** and **improper statements** to establish its **factual basis**" for accepting the plea, failing to inquired into Defendant's intelligence, educational background, and understanding of the charge. Doc. 11, pp. 10-11.

This claim is contradicted by the record. As summarized above, the court did make inquiries as to Defendant's intelligence and understanding of the charges. Defendant agreed under oath to the statement of facts and to his guilt of the offense charged in count one of the indictment. The court made a finding "that the facts that the government is prepared to prove and that you have admitted in the written statement of facts in the plea agreement and also here in open court this afternoon are sufficient to sustain your guilty plea." Doc. 59, pp. 16. Defendant is not entitled to relief on this claim.[10]

**Ground Fourteen**

Defendant asserts that his sentence was increased based on facts not charged or proven to a jury beyond a reasonable doubt as required by Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See also* United States v. Booker, 543 U.S. 200, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[11] Blakely and Booker

---

[10] Within the memorandum of law, Defendant points to the court's statement at sentencing that "I haven't seen these pictures and I don't want to." Doc. 61, p. 44; doc. 112, p. 2. The court is not required to examine the physical evidence in taking a plea, however, when there is no dispute as to what the Government claims would be proven. It could not be seriously contended in a drug case, for example, that the court must test a controlled substance before accepting a guilty plea involving the substance.

[11] In Apprendi, the Court "confirm[ed] the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime

had not yet been decided when Defendant was sentenced, and they do not apply

retroactively on collateral review.  Varela v. United States, 400 F.3d 864, 867 (11th Cir.),

*cert. denied,* __ U.S. __, 126 S.Ct. 312 (2005).[12]

**Ground Fifteen**

Defendant asserts that the Government breached the plea agreement by failing

to file a substantial assistance motion and to make known the extent of Defendant's

cooperation.  He alleges that he "submitted hundreds of **names** and **e-mail addresses**

leading to the individuals who were in possession of thousands of child pornography."

Doc. 111, p. 12.  Defendant also alleges that he was rejected a hearing on this issue.

*See also* doc. 112, pp. 16-17, referencing doc. 80 (*pro se* motion requesting in camera

hearing).  Defendant asserts that if he had known the Government would not keep its

promise he would not have entered a guilty plea.

The plea agreement, which Defendant acknowledged under oath, provided that

"[i]f, in the sole discretion of the United States Attorney, Northern District of Florida, the

defendant is deemed to have provided substantial assistance," then the Government

would file the appropriate motion.  Doc. 28, p. 6.  Defendant later disavowed statements

---

beyond the prescribed statutory maximum must be submitted to a jury, and proved
beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.  In Blakely, the
Court applied Apprendi to a sentence enhanced under state sentencing guidelines.
Booker extended the rationale of Blakely to the Federal Sentencing Guidelines.

[12] Though Apprendi had been decided prior to Defendant's plea and sentencing,
prior to Blakely and Booker there was binding precedent in this circuit holding that
Apprendi did not apply to determinations made under the federal sentencing guidelines.
*See* United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001) (en banc).
Counsel can therefore not be faulted for failing to make such an argument.

he had made under oath in pleading guilty, and the Government could reasonably determine that he would not be useful in investigating or prosecuting others.

Moreover, the refusal to file a substantial assistance motion is subject to judicial review only upon a showing of a constitutionally impermissible motive, such as race or religion.  Wade v. United States, 504 U.S. 181, 185-86, 112 S.Ct. 1840, 1842-43, 118 L.Ed.2d 524 (1992); United States v. Forney, 9 F.3d 1492, 1499-1503  (11th Cir. 1993) (requiring unconstitutional motive for refusing to file motion, even where is a Government agreement to "consider" filing a motion, where the determination of whether defendant provided substantial assistance was left "solely" to the Government) (citing Wade, other citations and footnotes omitted)  United States v. Nealy, 232 F.3d 825, 831 (11th Cir. 2000) (citing Wade and Forney, other citations omitted).  No such motive has been identified.  Defendant is not entitled to relief on this claim.

**Ground Sixteen**

Defendant asserts that his conviction was the result of an illegal search and seizure, as the warrant failed to establish probable cause that pornographic images of actual children would be found in his home.  Defendant also claims the affidavit in support of the warrant failed to include facts about WebTV, such as how items are sent and the use of screen names.

Any defenses were waived by the guilty plea, which Defendant acknowledged under oath.  To the extent the claim could be construed as challenging counsel's effectiveness in the context of the plea, it is premised on the alleged absence of actual child pornography.  That premise is unsupported, and should be rejected for reasons previously stated.

**Ground Seventeen**

Defendant claims that his sentence is invalid as the court failed to comply with FED. R. CRIM. P. 32(c)(3)(D) by making findings of fact.  He claims he "**challenged** and **objected** to over **30 erroneous facts** and **outrageously false statements** made in the PSI pursuant to **Rule 32** in his 60 page document submitted to this court."  Doc. 111, p. 13.  *See also* doc. 112, pp. 14, 19-20 (referencing the 60 page document).  Defendant asserts that the court was obligated to make findings of fact to be appended to the PSR.

The court has been unable to locate a 60 page document in the record.  In attorney Patterson's motion to withdraw, he noted that Defendant had engaged in actions he found "repugnant and imprudent."  Doc. 32, p. 1.

> Namely, against counsel's advice, the Defendant has sent to the court a sixty (60) page document raising numerous issues that tend to suggest a lack of knowledge on the Defendant's part to the crime to which he pled guilty on August 15, 2002.
>
> The Defendant makes material representations to the Court with regards to the advice rendered by the undersigned.  Namely, the Defendant was at no time told a sentence of "twelve months" was what he could expect. . . .
>
> The Defendant has failed to follow the advice of counsel [regarding] specific time lines for filing of objections to the Presentence Report, and instead sends his comments directly to the court, circumventing counsel. . . .
>
> The undersigned received a copy of the Defendant's sixty page comments on October 28, 2002. . . .

*Id.*, pp. 1-3 (paragraph numbers omitted). The minutes of the hearing on counsel's motion to withdraw do not reflect that the letter was admitted into evidence.  Doc. 34.

At the hearing on counsel's motion to withdraw, the court said to Defendant:

Much of the letter that you wrote and some of the other materials that were submitted – there are a number of other letters submitted and so forth, much of that deals with matters that have nothing to do with the sentence that's going to be imposed in this case.

Doc. 60, p. 9. In appointing new counsel, the court told Defendant to talk to the new lawyer about the case, about what was true and what was not true. *Id.*, pp. 6-7.

There is no docket entry on or around October 28, 2002, reflecting receipt of the 60 page letter. Two other *pro se* motions were filed soon thereafter and denied, with the court noting that the *pro se* pleadings were improper. Docs. 37 and 38 (motions to appoint counsel and dismiss indictment) and 39 (order).[13] The court's order of December 6, 2002, addressed three documents forwarded directly to the judge rather than the clerk of court: a motion to be released, a letter from counsel Taylor to Defendant dated November 21, 2002, and a letter to the judge dated November 28, 2002, apparently from Defendant's mother. Doc. 42. The documents were returned to Defendant as improperly submitted, and were not considered by the court. *Id.*, p. 3.

At sentencing, Defendant's *pro se* motion to withdraw plea, and competency evaluation (including the cover letter) were introduced, and are attached to the minutes

_____

[13] In his *pro se* motion to dismiss the indictment, Defendant said:

I sent the court a sixty page letter to try to help myself because Mr. Patterson did nothing. I only brought up "statements" or "issues" that I was falsely accused of, and statements in the plea agreement that I had no knowledge I was pleading guilty to. I was [given] the plea and cooperation agreement from Mr. Patterson in court, and had no time to read and understand any of it. Mr. Patterson never went through the plea and cooperation agreement or never explained anything with me.

Doc. 38, pp. 1-2.

in the file.  Doc. 46; *see also* doc. 61, p. 6 (tendering three page handwritten letter to withdraw the plea).  In arguing that Defendant was not entitled to a reduction for acceptance of responsibility at sentencing, the Government obviously had the 60 page document.  Doc. 61, p. 52 (counsel for the Government had looked through, "I don't know what they call it – letter that Mr. Alford wrote.  Page 57, I think the court has a copy.  You've read through it.").  Defendant complained at sentencing that he had not gone through his PSR with Mr. Taylor; "I haven't gone through any of the objections I had that I had wrote out or anything." *Id.*, p. 13.  He was told to talk to counsel as long as he wanted to, and a recess was taken. *Id.*  In going through his objections, counsel later noted that "my client had made the statement in the courtroom prior to us taking the break that there were other matters that he wanted to object to.  I hadn't been advised on any of them, but one of the ones that was pointed out" was the sex offender registration requirement. *Id.*, p. 26.

Defendant has not identified specific sentencing objections which should have been resolved by the court pursuant to Rule 32.  Moreover, it is not even clear that he gave the information to Mr. Taylor, and no showing of counsel's ineffectiveness at the time of sentencing.

**Ground Eighteen**

Defendant claims that his conviction was the result of selective and vindictive prosecution, and sets forth a conspiracy theory regarding Sheriff Willoughby and FDLE Agent Bruce Johnson, who were allegedly stalking Defendant for ten years to find some offense with which to charge him.  Defendant claims that thousands of people are caught distributing these images but only a few are charged and prosecuted.

Defendant claims in his memorandum that Michelle Hando, the woman in Pennsylvania (presumably who received the email images) wrote him a letter which said "Mr. Johnson admitted to her that he and Willoughby have been '**stalking**' Movant for more than '**Ten years**' trying to catch him on what ever they could find.'  (**Movant has letter**)."  Doc. 112, p. 21.

In his *pro se* motion to dismiss the indictment, Defendant said that Patterson told Defendant's parents that Defendant "was in fact set up by the probation officer Jeff Law, and the state [attorney]."  Doc. 38, p. 7.  Defendant said he believed Mr. Law "had to have talked to the state attorney to have said these things," and said he could prove with "evidence and witness [sic] that Jeff Law did lie under oath."  *Id.*  Defendant complained that counsel refused his request to file charges against Law.  *Id.*

Defendant's concerns regarding a conspiracy were noted at sentencing and in the competency paperwork.  Doc. 61, pp. 7-8, 20-21.  Counsel Taylor said he advised Defendant that, even if he had been targeted or some of his other allegations were true, it might not be relevant here.  Doc. 61, pp. 7-8.

Defendant waived any selective prosecution claim by pleading guilty.  To the extent it is raised as a basis for ineffective assistance of counsel (whether affecting the voluntariness of the plea or through counsel's failure to raise the issue on appeal), it is completely unsupported.  "The reality resulting from limited law enforcement and judicial resources is that not every criminal violation of the United States Code can be prosecuted."  United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000), *cert. denied*, 532 U.S. 1019 (2001).  Prosecutors have broad discretion in deciding which crimes to prosecute, subject to constitutional constraints.  *Id.*  It is a "demanding" burden to show

selective prosecution under the Constitution:  "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear* evidence to the contrary."  *Id.*, *quoting* (with added emphasis) United States v. Armstrong, 517 U.S. 456, 465, 116 S.Ct. 1480, 1486-87, 134 L.Ed.2d 687 (1996).

To even be entitled to discovery in support of a selective prosecution claim, a Defendant must produce some evidence to show that the Government has failed to prosecute people who are similarly situated to him.  *Id.*, at 469, 116 S.Ct. at 1488.  In Armstrong, the Court found no evidence to show that individuals who were not Black and could have been prosecuted for the same offense were not prosecuted.  517 U.S. at 470, 116 S.Ct. at 1489.  *See also* Smith, 231 F.3d at 809 (noting that "[t]here can be all kinds of practical reasons, including differences in evidence or in the progress of the investigation, which cause the government to prosecute some criminals before others for the same crime.").

Thousands of people may transmit images just like those transmitted here and may never be caught or prosecuted.  But that does not mean they are similarly situated with Defendant.  He sent the images to someone who did not seek those kinds of images.  The person had previously, at Defendant's request, sent him an innocent image of her and her child and was shocked to receive such images in return.  She turned over the information to law enforcement, and was willing to testify if this case had gone to trial.

Defendant has not shown there were others, who committed this offense by sending emails or images to unwitting recipients, *and* whose emails and images were referred to law enforcement, who were not prosecuted.  At best this shows a failure to

prosecute others for lack of knowledge of the offense, or lack of proof. *Cf.*, Oyler v.

Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446  (1962) (penitentiary

statistics reflected a high percentage eligible for recidivist sentencing had not received

enhanced punishment but there was no showing the prior records were available to the

prosecutors, "[h]ence the allegations set out no more than a failure to prosecute others

because of a lack of knowledge," which did not deny equal protection).

**Recommendation**

For the reasons set forth above, it is respectfully **RECOMMENDED** that the

amended § 2255 motion, doc. 111, filed by Michael Ray Alford be **DENIED WITH**

**PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on August 3, 2007.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**